IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RENE ARTAL GONZALEZ,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, NDCS Work Ethic Camp; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | **8:26CV71**<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Rene Artal Gonzalez's Petition for Writ of Habeas Corpus. (Filing No. 1). Artal Gonzalez, a noncitizen ordered removed from the United States, challenges his continued detention by U.S. Immigration and Customs Enforcement. For the reasons stated below, his petition will be denied.

## BACKGROUND

Artal Gonzalez is a Cuban national and citizen. (Filing No. 1 at 3). He entered the United States near Laredo, Texas in February 2023. (Filing No. 10 at 3). Artal Gonzalez was served a Notice to Appear and paroled into the United States under the "Mass Migration, Cuban Parolees" status. (Filing No. 10 at 3); (Filing No. 14 at 1). His status was adjusted to lawful permanent resident around two years later. (Filing No. 14-1). Prior to his detention, Artal Gonzalez lived in Grand Island, Nebraska with his wife and children. (Filing No. 14 at 1).

In June 2025, U.S. Immigration and Customs Enforcement (ICE) found Artal Gonzalez in the Merrick County Jail, where he was being held on charges of false reporting and obstructing police. (Filing No. 8 at 2). Realizing that Artal Gonzalez had prior convictions that would make him removable from the United States, ICE sent a detainer and arrest warrant to the county jail.

(Filing No. 8 at 2). Following his release from state custody, ICE detained Artal Gonzalez and served him a Notice to Appear initiating removal proceedings. (Filing No. 14 at 1).

Artal Gonzalez applied for asylum around six weeks later. (Filing No. 10 at 4). On October 27, 2025, the immigration judge issued an order denying his request for asylum and withholding of removal. (Filing No. 10-2). The immigration judge also denied cancellation of removal for lawful permanent residents under INA § 240A(a). (Filing No. 10-2 at 2). Artal Gonzalez told the immigration judge that—if he were to be ordered removed—he wanted to be removed to Venezuela. (Filing No. 14 at 1). Accordingly, the immigration judge ordered Artal Gonzalez removed to Venezuela, or in the alternative, to Cuba. (Filing No. 10-2 at 3). Artal Gonzalez was transferred to the McCook Detention Center in McCook, Nebraska around one month later, where he remains. (Filing No. 14 at 1).

While at the McCook Detention Center, ICE served Artal Gonzalez with documents "warn[ing] [him] about failing to cooperate with the removal process." (Filing No. 10 at 5); (Filing No. 10-3, Filing No. 10-4). Artal Gonzalez was denied repatriation to Cuba in December 2025. (Filing No. 10 at 5). An ICE agent conveyed that information to Artal Gonzalez "over the phone" and asked him about "an optional third country removal to Mexico." (Filing No. 14 at 2). According to ICE, the United States and Mexico "have [an] agreement in place to accept those from other countries being removed from the United States," including Artal Gonzalez. (Filing No. 10 at 5). Artal Gonzalez told the ICE agent that he "would not go to Mexico" as he "fear[s] for his safety"[1] there. (Filing No. 14 at 2).

ICE served Artal Gonzalez with a "Notice of Failure to Comply" two days later. (Filing No. 10-5). The Notice asserted that Artal Gonzalez "failed to assist ICE in applying for a travel document" and noted that "[w]hen [d]eportation [o]fficers asked if you would comply with a removal to Mexico, you refused." (Filing No. 10-5). The Notice further provided that Artal Gonzalez would "remain in ICE custody until [he] demonstrate[s] that [he] is making reasonable

---

[1] There seems to be a factual dispute between the parties as to whether Artal Gonzalez told the ICE agent that he would fear for his safety in Mexico. According to a deportation officer's recount of the call, Artal Gonzalez merely "stated that he would not go" there. (Filing No. 17 at 5). The Court need not resolve this issue to rule on Artal Gonzalez's petition, though as discussed below, there is no dispute that the government now has notice of his fear claim.

efforts to comply with the order of removal" and he cooperated with "ICE's efforts to remove" him. (Filing No. 10-5).

In response, Artal Gonzalez filed this petition for a writ of habeas corpus. (Filing No. 1). Because there "is no significant likelihood that [Artal Gonzalez] will be removed in the reasonably foreseeable future," his argument runs, his continued detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Filing No. 1 at 8). He therefore seeks immediate release. (Filing No. 1 at 9).

The Court entered an order to show cause directing the Respondents to respond to the petition and Artal Gonzalez to reply. (Filing No. 3). The parties did so. (Filing No. 8, Filing No. 12). After reviewing their initial briefs, the Court directed the Respondents to address any efforts made to remove Artal Gonzalez to Venezuela. They opted to supplement their response in writing (Filing No. 15) and the Court allowed Artal Gonzalez to respond. (Filing No. 18). The parties agreed to waive a hearing on Artal Gonzalez's petition, and the Court deemed the matter submitted on their written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts may grant writs of habeas corpus. 28 U.S.C. § 2241(a). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Artal Gonzalez bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

Discussion of the statutory scheme governing Artal Gonzalez's detention is in order at the outset. 8 U.S.C. § 1231(a) governs the detention, release, and removal of individuals "ordered removed," like Artal Gonzalez. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). After the entry of a final order of removal against a noncitizen, the government generally must secure the noncitizen's removal during a 90-day "removal period." § 1231(a)(1)(A). The statute provides that the government "shall" detain noncitizens during the statutory removal period. § 1231(a)(2).

That period must be "extended beyond" ninety days if a noncitizen "conspires or acts to prevent" their removal "subject to an order of removal." § 1231(a)(1)(C).

After the removal period expires, detention becomes discretionary. § 1231(a)(6). But that discretion has limits. *See Zadvydas*, 533 U.S. at 697. In *Zadvydas,* the U.S. Supreme Court determined that "read in light of the Constitution's demands," § 1231(a)(6) "does not permit indefinite detention" but instead "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689.

"[F]or the sake of uniform administration in the federal courts," the Supreme Court "recognize[d]" a six-month period where detention is "presumptively reasonable." *Id.* at 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The presumption, however, is not dispositive. *Id.* ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").[2] In addressing the operation of § 1231(a)(1)(C) in the context of a *Zadvydas* claim, "[m]any courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show 'good cause' to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705 (W.D. Tex. 2021) (collecting cases). The Court finds that approach sound. *See id.*

Here, Artal Gonzalez has failed to carry his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. The risk of indefinite detention driving

---

[2] The Respondents make a threshold argument that Artal Gonzalez is not entitled to release because six months have not elapsed since the date of his removal order. (Filing No. 8 at 5. Filing No. 15 at 2). The premise is accurate (if, at this point, by only a matter of days), but the conclusion does not follow. The government is not guaranteed the right to hold a noncitizen for at least six months. *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line . . . and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."). Given the Court's obligation to "summarily hear and determine the facts[ ] and dispose of the matter as law and justice require," 28 U.S.C. § 2243, the Court will not deny the petition merely because the six month clock has not expired.

the Supreme Court's decision in *Zadvydas* does not exist when a noncitizen is the cause of their own detention. *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003). "The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Id.; see also, e.g., Laguardia , Next Friend of Laguardia v. Immigr. & Customs Enf't*, 2026 WL 440749, at \*2 (N.D. Iowa Feb. 17, 2026) (noting that a habeas petitioner's "extended detention is based on his own failure to cooperate with removal efforts[ ] rather than any Government action in failing to timely execute a removal order"). Such is the case here. "[U]nlike the detainees in *Zadvydas,* [Artal Gonzalez] himself is responsible for his plight." *Id.* He "has the keys in his pocket" and can "end[ ] his detention immediately" by cooperating with the government's efforts to remove him to Mexico. *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)). That means there is a significant likelihood of removal in the reasonably foreseeable future—for their part, the Respondents confirm the government would have "complete[d]" his removal to Mexico "but for [his] refusal." (Filing No. 8 at 6); *see Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 711 (W.D. Tex. 2021) ("As Petitioner has been found to have obstructed his removal under § 1231(a)(1)(C), the court holds that Petitioner fails to meet his burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future."). Artal Gonzalez is therefore not entitled to release.

Artal Gonzalez's arguments to the contrary are unpersuasive. Focusing on the removal order itself, he contends his removal to Venezuela or Cuba is not significantly likely in the reasonably foreseeable future. Removal to Cuba is not an option—that much is not in dispute. (Filing No. 12 at 6); (Filing No. 8 at 2). As for Venezuela, Artal Gonzalez initially pointed out that "the record contains no evidence of the likelihood of removal to Venezuela[.]" (Filing No. 12 at 6). So, he argued, since there was nothing indicating he had refused removal to either of those countries, *Zadvydas* requires his release. (Filing No. 12 at 6). And he contended that the government therefore could not seek to remove him to a "third country"—Mexico—because he had designated Venezuela as the "country to which [he] wants to be removed" and there was nothing authorizing the government to "disregard" that designation, *see* 8 U.S.C. § 1231(b)(2)(A), (C). (Filing No. 12 at 8).

But as the Respondents point out in their supplemental briefing, there is evidence that removal to Venezuela is also not an option. ICE sent Artal Gonzalez I-229(a) forms "requesting information to assist ICE in obtaining a travel document," but they "went unanswered." (Filing No. 17 at 5). ICE was thus unable to secure a travel document. (Filing No. 17 at 5). Further, ICE says, Venezuela does not accept deportees without any residency or citizenship there, and Artal Gonzalez falls within that category. (Filing No. 17 at 5). In ICE's view, then, there is "no known mechanism in place for Venezuela to receive [Artal Gonzalez]." (Filing No. 17 at 5). Accordingly, the Respondents "submit the Government may disregard [Artal Gonzalez's] designation under 8 U.S.C. § 1231(b)(2)(C)(ii) & (iii),"[3] meaning that "third country removal options" are on the table. (Filing No. 15 at 2); *see* 8 U.S.C. § 1231(b)(2)(E)(vii) (authorizing the government to remove a noncitizen to any "country whose government will accept the alien into that country" when the government may not remove the noncitizen to any country covered by that alien's order of removal); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025) (characterizing removals under 8 U.S.C. § 1231(b)(2)(E)(vii) as "third-country removals").

Based on the evidence before the Court, Artal Gonzalez has failed to show that a "third country" removal to Mexico under § 1231(b)(2)(E)(vii) is not significantly likely in the reasonably foreseeable future. He has not rebutted the Respondents' evidence indicating Venezuela will not accept him because he has no ties there in citizenship or residency. Thus, it appears the government may "disregard" his designation of Venezuela as the country to which he wants to be removed under § 1231(b)(2)(C)(iii). As things stand, the state of the evidence suggests Venezuela's government "is not willing to accept [Artal Gonzalez] into the country[.]" *Id.* So too with Cuba—its government denied him repatriation there. (Filing No. 10 at 5). Removal to Mexico under § 1231(b)(2)(E)(vii) therefore seems possible given there is evidence that Mexico "will accept [Artal Gonzalez] into that country." *Id.;* (Filing No. 10 at 5).

---

[3] 8 U.S.C. § 1231(b)(2)(C)(ii) allows the government to "disregard" the noncitizen's "designation" of the country to which they want to be removed if "the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country[.]" Section 1231(b)(2)(C)(iii) gives the government that option if "the government of the country is not willing to accept the alien into the country."

The Court acknowledges, however, that Artal Gonzalez has stated he "fear[s] for [his] safety [if he were to be removed to Mexico] and ha[s] heard about Cubans being attacked and killed in Mexico." (Filing No. 14 at 2). Artal Gonzalez has statutory protection from that outcome: the government "may not" remove him to Mexico if it "decides that [Artal Gonzalez's] life or freedom would be threatened in that country because of the [Artal Gonzalez's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Foreign Affairs Reform and Restructuring Act (FARRA) similarly provides Artal Gonzalez with protection from being removed to any country where he would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18.

The issue before the Court—in its habeas jurisdiction—is whether Artal Gonzalez has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future such that he is entitled to release. *Zadvydas*, 533 U.S. at 689. As set forth above, he has not. Whether Artal Gonzalez's fears of torture or persecution in Mexico could preclude removal there is a distinct issue. Those claims should be raised, in the first instance,[4] to the government in the context of Artal Gonzalez's immigration proceedings—the Court cannot enjoin the government from removing him to Mexico or otherwise grant injunctive relief in this habeas case. *See, e.g., Abdi v. Trump*, 2026 WL 560130, at *4-*5 (D. Neb. Feb. 27, 2026). If, upon expressing his fears of torture or persecution in Mexico, the government fails to follow the law, Artal Gonzalez may, of course, seek appropriate relief.

In sum, the Court concludes that Artal Gonzalez has failed to carry his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. He has the keys in his pocket and can end his detention by cooperating with the government's efforts to remove him to Mexico. If he indeed fears being removed there, he must raise those claims in a different forum. At this point, Artal Gonzalez is not entitled to habeas relief. Accordingly,

---

[4] That said, it seems impossible for the government to ignore the fact that Artal Gonzalez raised a claim of fear in *this* proceeding. That means, in the Court's view, that screening for protection under 8 U.S.C. § 1231(b)(3)(A) should follow.

7

**IT IS ORDERED:**

1.  Petitioner Rene Artal Gonzalez's Petition for Writ of Habeas Corpus (Filing No. 1) is denied.

2.  A separate judgment will be entered.

Dated this 16th day of April, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

8